IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:02CV198-03-V
(4:94CR44-V)

| | |
|---|---|
| ELLANCER ALLEN McGRADY, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | **O R D E R** |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondents. ) | |
| ) | |

**THIS MATTER** comes before the Court upon Petitioner's Motion to Vacate, Set Aside, Or Correct Sentence under 28 U.S.C. § 2255, (Document No. 1), filed August 26, 2002; on the Government's Answer to Petitioner's Motion and Motion for Summary Judgment, filed October 22, 2002 (Document No. 5.)

For the reasons stated herein, the Government's Motion for Summary Judgment will be granted, and the Petitioner's Motion to Vacate will be denied and dismissed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

According to the record, on May 3, 1994, the Petitioner, along with 19 other persons, was named in a multi-count Indictment. Specifically, the Petitioner was charged with conspiring with the other 19 persons to possess with intent to distribute more than 500 grams of cocaine powder and more than 50 grams of cocaine base (Count 1); and with possession with intent to distribute and distribution of cocaine base (Counts 11, 13, 19, 20, 23, 36 and 37). Several of the Petitioner's co-defendants accepted plea offers and agreed to cooperate with the government; however, the

1

Petitioner went to trial on his charges.

At trial, a jury convicted the Petitioner of all of the foregoing charges, except the one set forth in Count 36. On March 26, 1996, the Court sentenced the Petitioner to a term of life imprisonment on the conspiracy conviction; and to concurrent 20-year terms on each of the other counts of conviction. The Petitioner appealed his case to the Fourth Circuit Court of Appeals. By Order issued February 29, 1999, the Petitioner's convictions were all affirmed, but his conspiracy sentence was vacated and remanded for this Court to determine whether the Petitioner's offense level properly was enhanced under U.S.S.G. §2D1.1(b)1 (pertaining to a two-level enhancement for possession of a dangerous weapon during the commission of certain drug offenses). See United States v. McGrady, No. 96-4269 (4th Cir. Feb. 17, 1999). Thereafter, on October 4, 1999, this Court held a Re-Sentencing Hearing for the Petitioner, during which it concluded that the Petitioner should receive an enhanced sentence pursuant to U.S.S.G. §2D1.1(b)(1). Accordingly, the Court again imposed a term of life imprisonment for Petitioner's conspiracy conviction. Not surprisingly, the Petitioner appealed his sentence to the Fourth Circuit Court of Appeals. This time, however, the Court of Appeals affirmed Petitioner's conspiracy sentence. See United States v. McGrady, No. 99-4384 (4th Cir. June 29, 2001). Thereafter, on August 28, 2001 the Court of Appeals denied Petitioner's Petitioner for Re-Hearing and on September 10, 2001, the Court of Appeals entered its final mandate affirming Petitioner's case..

On August 26, 2002, the Petitioner filed the instant Motion to Vacate, setting forth some thirteen issues for the Court's review. However, after reviewing those matters this Court determined that only four of Petitioner's claims raised non-frivolous issues which should be considered by the Court. Accordingly, by Order filed September 11, 2002, ths Court dismissed nine of the Petitioner's

claims - the ones asserting that Petitioner had been erroneously charged, tried and convicted of engaging in a non-existent conspiracy; and the Court directed the government to respond to the remaining four claims by which Petitioner was asserting that he received ineffective assistance of counsel.

On September 21, 2002, the government filed its Answer to the Petitioner's Motion to Vacate, which the Court construed as a de facto motion for summary judgment and to which the Petitioner was advised to respond.

On October 28, 2002, the Petitioner filed his first Motion to Amend his Motion to Vacate by which he sought to raise a claim for alleged violations of his Due Process Rights, Equal Protection and trial by an impartial jury, and to raise three additional claims of ineffective assistance of counsel. However, by Order filed February 3, 2002, the Court denied the Petitioner's Motion to Amend pointing out, among other matters that such Motion was time-barred under the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA").

Petitioner filed his response to the government's motion for summary judgment on November 25, 2002. However, on February 25, 2003, Petitioner filed a second Motion to Amend his Motion to Vacate. In this motion he sought to add the claims proposed in the first Motion to Amend. Additionally, Petitioner filed a Motion for Reconsideration of his first Motion to Amend. Petitioner was again advised that his conviction and sentences became final on September 10, 2001, when the Court of Appeals issued its final mandate. Thus, pursuant to the AEDPA, the petitioner had up to and including September 10, 2002, in which to bring all of his collateral claims in his Motion to Vacate. By Order filed March 11, 2003, this Court denied Petitioner's second Motion to Amend and his Motion for Reconsideration of his first Motion to Amend as they were time-barred.

3

On April 11, 2005, Petitioner filed his third Motion to Amend his Motion to Vacate. As the Court had done in its previous Orders, by Order dated April 27, 2005 it once again explained that Petitioner's claims were time-barred by the AEDPA.

## II. ANALYSIS

With respect to claims of ineffective assistance of counsel, a petitioner must show that counsel's performance was constitutionally deficient to the extent that it fell below an objective standard of reasonableness, and that he was prejudiced thereby. Strickland v. Washington, 466 U.S. 687-91 (1984). In making this determination, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. Id. at 689; see also Fields v. Attorney Gen. Of Md., 956 F.2d 1290, 1297-99 (4th Cir.), cert. denied, 474 U.S. 865 (1985); Hutchins v. Garrison, 724 F.2d 1425, 1430-31 (4th Cir. 1983), cert. denied, 464 U.S. 1065 (1984); and Marzullo v. Maryland, 561 F.2d 540 (4th Cir. 1977), cert. denied, 435 U.S. 1011 (1978).

Under these circumstances, the petitioner "bears the burden of proving Strickland prejudice." Fields, 956 F.2d at 1297, citing Hutchins, 724 F.2d at 1430-31. If the petitioner fails to meet this burden, a reviewing court need not consider the performance prong." Fields, 956 F.2d at 1290, citing, Strickland, 466 U.S. at 697.

Furthermore, in considering the prejudice prong of the analysis, the Court must not grant relief solely because the petitioner can show that, but for counsel's performance, the outcome would have been different. Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998), cert. denied, 528 U.S. 855 (1999). Rather, the Court "can only grant relief under ... Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Id., quoting Lockhart v. Fretwell, 506 U.S. 364 U.S. 364, 369 (1993).

4

Turning now to Petitioner's specific claims, the Court finds that the Petitioner has failed to demonstrate an entitlement to any relief. First Petitioner claims that his attorney, Roger Smith, was ineffective because he failed to communicate the plea bargain to the Petitioner. The Petitioner claims that if he had been advised of the offer and advised by his attorney to take the offer, he would have accepted counsel's advice. Petitioner was ultimately sentenced to life, but the plea bargain, if accepted by Petitioner, would have taken him out of the life sentence category. Therefore, he argues that but for counsel's unprofessional error - failure to communicate the plea offer - the result of the proceeding would have been different in that he would now be serving a shorter sentence.

In response to the Petitioner's claim, the government submitted an affidavit from Petitioner's trial counsel, Roger Smith. Mr. Smith asserts that it is his standard practice to give a copy of all documents, especially a plea offer, to his clients. Generally, he marks his copy of the document to indicate that he gave a copy to his client, which he did not do in this case. However, he did meet with Petitioner the day after receiving the plea offer. His notes do not reflect any other reason for this meeting on the day after receiving the plea offer. Therefore, based on his notes that he did meet with Petitioner the day after receiving a plea offer, Mr. Smith believes the meeting must have been for the reason of communicating the offer to his client. Given the amount of time elapsed since the trial in the case, it is not unreasonable that Mr. Smith does not have specific recollection of communicating the plea offer in this case. He does, however, specifically recall that the Petitioner was adamant that "the government had nothing on him, could prove nothing, and that he wasn't going to accept any plea bargains." (Smith affifavit 1.) He advised Mr. Smith that he had nothing to tell the government and would not cooperate with them. This certainly belies Petitioner contention that he would have accepted the plea offer if his attorney advised had him to do so. Additionally, Mr. Smith discussed

5

with Petitioner, early on in the course of the representation, the possibility of Petitioner cooperating with the government. Petitioner advised Mr. Smith that he did not want to talk about possible options or alternatives and maintained that the government had nothing on him and he would not cooperate with them. (Smith Affidavit 1-2.) Finally, Mr. Smith contends that in every case, with every client, he discusses all of the options with his clients including pleading guilty or going to trial. He adhered to that practice with Petitioner as well, but, again, Petitioner was adamant that the government could not win the case against him.

While Mr. Smith does not specifically recall conveying the specific plea offer to Petitioner, he personally visited Petitioner the day after the offer came from the government and his notes reflect no other reason for the visit, other than to communicate the offer.[1] As stated above, based on the timing of the visit, Mr. Smith believes the purpose of the visit was to communicate the offer to the Petitioner. Additionally, he does have a specific recollection that Petitioner did not want to plead guilty as he was convinced the government could not convict him. Furthermore at the beginning of his representation of Petitioner, he does specifically recall discussing, in general, the options of accepting a plea, cooperating with the government or going to trial. Mr. Smith clearly recalls that Petitioner wanted to go to trial because of his strong belief that the government could not win this case. (Smith Affidavit 1-2.)

Petitioner bears the burden of establishing prejudice, even if counsel's performance fell below an objective standard of reasonableness. The Court finds Mr. Smith's affidavit persuasive. Petitioner

---

[1] The Court notes Petitioner's argument that Mr. Smith's "Out of Court Hourly Worksheet" does not contain an entry for December 22, 1994, the day Mr. Smith claims to have met with Petitioner. However, the Court has reviewed that document and it does indeed reflect an entry for December 22, 1994 which states that Mr. Smith had a "conference with cl & witness . . ." Mr. Smith explained in his affidavit that the abbreviation cl stands for client.

contends that Mr. Smith failed to communicate the plea offer to him and that if he did he would have accepted it. However, Petitioner does not refute Mr. Smith's contention that Petitioner was adamant that he would not cooperate or plead because the government would not able to convict him. He does not refute Mr. Smith's contention that at the beginning of the representation, he did go over the options of pleading verses going to trial with Petitioner and Petitioner wanted to go to trial. He does not indicate that something other than the plea offer was discussed at the meeting with his counsel the day after the government made the offer. In fact, he does not address the meeting with his counsel at all, except erroneously to assert that counsel's records failed to reflect it. In short, he says nothing more than that my attorney failed to advise me of the plea offer and if he had I would have accepted.

Under the <u>Strickland</u> test, Petitioner has not established prejudice because he has not refuted Mr. Smith's claim that Petitioner was adamant that the government could not convict him therefore he was not willing to cooperate or plead. (Smith Affidavit 1-2.) Therefore, even if Petitioner had been advised of this plea offer[2], there is no evidence that the result of the proceeding would have been different given Petitioner's consistent position that the government would not win this case. Petitioner has not met his burden under <u>Strickland</u>, therefore, this claim must be dismissed.

Next, Petitioner claims that his attorney failed to inform him that if he was found guilty, he would be exposed to the highest sentence available. He further claims that had he known he could receive a guidelines point reduction for pleading guilty, he would have pled.

---

[2] The Court is not suggesting that Mr. Smith failed to advise his client about the plea offer. The Court is merely pointing out that Ms. Smith has no specific recollection of talking with the Petitioner about the offer in this case, although his notes indicate he visited the Petitioner the day after the offer was made.

In his affidavit, Ms. Smith asserts that he not only discussed the sentencing guidelines and their impact on Petitioner's case, but he charted out the guideline calculation for each criminal history category for a level 32. (Smith Affidavit 2-3.) Further, Mr. Smith asserts that he "always tell[s] [his] clients what the worst case scenario could be based on the facts and information I have available to me at the time." (Smith Affidavit 3-4.) Petitioner ultimately was sentenced to life for Count One[3] and to concurrent 20 year terms on each of the other counts in the conviction. Mr. Smith contends that Petitioner was very well aware of the evidence against him in that this was a lengthy investigation and Mr. Smith forwarded all copies of the information and sent it to the Petitioner. Petitioner was "throughly aware of the statements made against him by co-defendants, of the reports made by the investigating officers, and of the exhibits to be used against him." (Smith Affidavit 3-4.) In the face of this evidence, Petitioner was clear that he was not going to plead because the government could not win the case against him. (Smith Affidavit 2.)

Petitioner does not refute Mr. Smith's claims at all. Instead he argues that his attorney's affidavit is unsupported because the documents to which he refers to support the affidavit are unverified and unauthenticated. The Petitioner claims that because the "Out of Court Hourly Worksheet" attached to his attorney's affidavit does not indicate a case name or case number, there

---

[3] Petitioner ultimately was sentenced to a term of life imprisonment because he was sentenced based on the larger quantity of drugs adduced from trial testimony. In addition, Petitioner's sentence was increased two levels due to a gun enhancement pursuant to 2D1.1(b)(1) (1998) of the Sentencing Guidelines and four levels due to a role enhancement. Therefore, Petitioner's offense level was increased from an offense level 38 to an offense level 44. Because 43 was the highest offense level on the sentencing chart, the court reduced Petitioner's offense level to a level 43. This offense level carries a life sentence.

is no way to establish that it belongs to his attorney or that it references his case.[4]

Again, the Court finds Mr. Smith's affidavit persuasive. He explains that he discussed the impact of the sentencing guidelines, although he admits he cannot recall specifically when he had this discussion with Petitioner. He included his notes wherein he charted the guideline calculation for each criminal history category for a level 32, the guideline offense for the conspiracy offense in 1994. When he received the government's plea offer, his notes reflect he went to see Petitioner [to explain the plea to him.] Mr. Smith's recollection is that the Petitioner did not want to accept the offer. (Smith Affidavit 1-3.) The Court has already addressed the issue regarding the plea offer above. The Petitioner does not refute the information contained in Mr. Smith's affidavit. Therefore the Court defers to Mr. Smith's affidavit, which the Court finds persuasive, and finds Petitioner's claim that his attorney failed to inform him that if he was found guilty, he would be exposed to the highest sentence available to be unsupported and self serving. Therefore, Petitioner's claim that his attorney failed to inform him of the impact of the sentencing guidelines is dismissed as he has not refuted Mr. Smith claims and has not satisfied the two part <u>Strickland</u> test.

Next, Petitioner alleges that his counsel was ineffective because he failed to present expert testimony regarding the conversion of hydrochloride to cocaine base and he failed to object to the government's expert on this issue.

Mr. Smith concedes that he did not offer any expert testimony on the conversion of powder cocaine to cocaine base, but that he did in fact object to the government's expert's testimony. Mr.

---

[4] The Court does not share Petitioner's concerns about the authenticity of the documents attached to Mr. Smith's affidavit. Rule 11 of the Federal Rules of Civil Procedure provides that when an attorney signs and files documents with the court, he is certifying that the allegations contained therein have evidentiary support under penalty of sanctions.

9

Smith also cross-examined the government's expert and brought out his lack of expertise in this area. Furthermore, Mr. Smith objected to the amount of the cocaine base when it was presented in the probation officer's presentence report. See Addendum to the Presentence Report, attached to Smith Affidavit.

Petitioner must show that counsel's performance was constitutionally deficient to the extent that it fell below an objective standard of reasonableness, and that he was prejudiced thereby. Strickland v. Washington, 466 U.S. 687-91 (1984). Again, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. Id. at 689; see also Fields v. Attorney Gen. Of Md., 956 F.2d 1290, 1297-99 (4th Cir.), cert. denied, 474 U.S. 865 (1985); Hutchins v. Garrison, 724 F.2d 1425, 1430-31 (4th Cir. 1983), cert. denied, 464 U.S. 1065 (1984); and Marzullo v. Maryland, 561 F.2d 540 (4th Cir. 1977), cert. denied, 435 U.S. 1011 (1978). Here, while Mr. Smith did not put on an expert of his own, he did object to the government's expert and he did satisfactorily cross examine the government's expert.

Based on this performance, the Court cannot say that Mr. Smith's performance was constitutionally deficient. Mr. Smith's conduct - i.e. objecting to the government's expert and cross examining him - is within the wide range of reasonable professional assistance. Additionally the Petitioner has not satisfied his burden of establishing the prejudice prong of the Strickland test. Therefore this claim is also dismissed.

Finally, Petitioner claims that his counsel was ineffective because he failed to investigate the government's witness, Sherry Luann Waters, and he failed to move for a continuance of Petitioner's second sentencing hearing, so that he could prepare a defense. Petitioner also claims that his counsel was ineffective because he did not tell Ms. Waters that the government could not petition the court

10

to get her sentence reduced. Petitioner is of the belief that had Ms. Waters known this, she would not have testified. Petitioner contends that he received a two-point enhancement because of Mr. Waters testimony which should satisfy the prejudice prong of Strickland.

At the first sentencing hearing, Detective Petty testified that Shemeca Hughs told him that Sherry Waters had a gun in her waistband. Prior to the second hearing, Mr. Smith became aware that the government could not locate Ms. Waters. So while Ms. Water's testimony at the second hearing was a surprise, Mr. Smith had reviewed all the discovery, including statements made by Ms. Waters, prior to the second hearing and did not believe that asking for a continuance would have resulted in any further impeachment of Ms. Waters than what he was able to accomplish at the hearing. Additionally, Mr. Smith explained that he did not call Ms Hughes to testify because he felt her testimony would have been damaging to Petitioner because she told Detective Petty that she saw Sherry Waters with a gun in her waistband and Ms. Waters gave the gun to Petitioner during a drug transaction. (Smith Affidavit 5-6.)

Once again, the Court notes that Petitioner has not refuted Mr. Smith's affidavit. Mr. Smith's explanation for not seeking a continuance of the sentencing hearing and for not calling Ms. Hughes as a witness is perfectly reasonable. Petitioner has not shown how his attorney's performance fell below the objective standard of reasonableness or how he was prejudiced by his attorney's performance. Petitioner's final claim of ineffective assistance of counsel is therefore dismissed.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the Government's Motion for Summary Judgment is **GRANTED** and Petitioner's Motion to Vacate is **DENIED and DISMISSED**.

**Signed: November 3, 2005**

*Richard L. Voorhees*
Richard L. Voorhees
United States District Judge